RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0304P (6th Cir.)
File Name: 01a0304p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

PAUL W. GREER,
　　　　*Petitioner-Appellant,*

　　　　*v.*

No. 98-4330

BETTY MITCHELL, Warden,
　　　　*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 96-00796—John M. Manos, District Judge.

Argued: October 23, 2000

Decided and Filed: September 4, 2001

Before: KENNEDY, NORRIS, and MOORE, Circuit
Judges.

—————————————

**COUNSEL**

**ARGUED:** Roger M. Synenberg, SYNENBERG &
MAREIN, Cleveland, Ohio, Michael J. Benza, Cleveland,
Ohio, for Appellant. Michael L. Collyer, OFFICE OF THE
ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for
Appellee. **ON BRIEF:** Roger M. Synenberg, SYNENBERG
& MAREIN, Cleveland, Ohio, Michael J. Benza, Cleveland,
Ohio, for Appellant. Michael L. Collyer, OFFICE OF THE

ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee.

————————

## OPINION

————————

ALAN E. NORRIS, Circuit Judge.  Paul W. Greer appeals from the denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  After careful consideration of the numerous issues raised by petitioner, we affirm the orders of the district court denying relief with one exception.  Petitioner contends that appellate counsel rendered constitutionally ineffective assistance in presenting his direct appeals to the Ohio courts.  Because the record has not been sufficiently developed for us to make a final determination concerning the merits of this claim, we shall remand to the district court with instructions that it conduct an evidentiary hearing on this one issue.

### I.

The facts that gave rise to this case can be summarized briefly by quoting, as did the district court, the synopsis preceding the opinion of the Ohio Supreme Court:

On Tuesday afternoon, January 29, 1985, the body of Louis A. Roth was discovered on his kitchen floor.  It was determined that he had been stabbed or otherwise wounded twenty-two times, several of which stab wounds punctured the left lung and right ventricle of the heart.  The time of death was established as approximately between 11:00 p.m. Sunday night and 1:00 a.m. Monday morning.  There was no sign of any struggle and it was apparent that Roth had been stabbed while he sat at his kitchen table.  Roth's home had been thoroughly searched. Bloodstains were also found throughout the home.

### h.  insufficient narrowing

Petitioner asserts that the use of the underlying crime, in this case aggravated robbery, as an aggravating circumstance does not "act to narrow the class of murders eligible for the death penalty."  In his view, it is wrong to allow the death penalty for felony murder without requiring at least one additional aggravating factor.

Such schemes have been upheld, however.  *See Tison, supra.*

### i.  electrocution cruel and unusual

Finally, petitioner contends that electrocution constitutes cruel and unusual punishment.  Not only has the constitutionality of electrocution been consistently upheld, *In re Kemmler*, 136 U.S. 436 (1890), but Ohio allows for the choice of lethal injection.

### IV.

We conclude that petitioner may not have received, on direct appeal, the assistance of counsel guaranteed by the Sixth Amendment.  We therefore **reverse in part** and **remand** this cause for an evidentiary hearing so that the district court may evaluate appellate counsels' performance with respect to the penalty phase of the trial in light of the factors we have discussed.  The district court's judgment in all other respects is **affirmed**.

justify death even though defendant did not have intent to kill).

### e. proof of mitigation

Petitioner next objects to the manner in which the Ohio statute allows weighing of the aggravating and mitigating circumstances because it does "not require the state to prove the absence of any mitigating factors or that death is the only appropriate penalty."

The Supreme Court only requires that the statutory scheme requires that the aggravating circumstances outweigh the mitigating ones. *See Blystone v. Pennsylvania*, 494 U.S. 299 (1990) (scheme mandating death penalty if jury finds one aggravating circumstance and no mitigating circumstances satisfies the Eighth Amendment).

### f. proportionality review

Although proportionality review is not constitutionally required, once a state adopts such a scheme, it must comport with due process. Ohio law provides that the Supreme Court shall "consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases." Ohio Rev. Code § 2929.05.

We note that petitioner has no Eighth Amendment right to proportionality review. *Coe v. Bell*, 161 F.3d 320, 352 (6th Cir. 1998). Furthermore, the record fails to support petitioner's contention.

### g. international law

Petitioner believes that the death penalty violates the Supremacy Clause because the United States has signed numerous international agreements that prohibit the death penalty.

Until the United States Supreme Court holds to the contrary, we are compelled to deny relief on this ground.

Police officers began to question Roth's neighbors, including appellant, Paul W. Greer. Eventually their canvassing efforts led back to appellant. This was because a neighbor had observed two cuts on appellant's fingers on Monday afternoon. Since the murder had been committed by means of a knife, investigators began to question appellant more closely concerning his wounds and his relationship to the victim. It was established that Roth had rented a home to appellant, who was unemployed, and allowed him to make repairs in lieu of paying rent. Also, Roth had, during the time of appellant's tenancy, provided, *inter alia*, food, money and a hot plate for appellant and his girlfriend. It was established that Roth was contemplating eviction of appellant. After hearing about cuts on appellant's fingers, police requested appellant to accompany them to the police station, which he did.

Police, with the permission of appellant's girlfriend, performed a search of the couple's residence. Therein police discovered various articles of bloody clothing and a wristwatch belonging to the victim. Eventually appellant confessed to having gone through the victim's home in search of valuables, but he insisted that he had not done so until Monday morning when Roth was already dead. Neighbors established that appellant had gone to see Roth at approximately 10:00 p.m. the night of the murder.

On February 6, 1985, appellant was indicted on the following charges: one count of aggravated murder in violation of R.C. 2903.01(A); one count of aggravated murder in violation of R.C. 2903.01(B), and one count of aggravated robbery in violation of R.C. 2911.01(A)(1). The state included an aggravated robbery specification to the second murder charge pursuant to R.C. 2929.04(A)(7), thus seeking the death penalty for the crime. Appellant pled not guilty and gave notice of his alibi defense. Following a trial on the merits, appellant was convicted of all counts, including the specification

on the second count. At the sentencing phase, appellant presented evidence in mitigation. The jury thereupon recommended that a sentence of death be imposed. The trial court then sentenced appellant to death. By its opinion dated March 4, 1987, wherein it conducted its independent analysis and review, the court of appeals affirmed both the trial court's judgment of conviction and the sentence of death.

*State v. Greer*, 39 Ohio St. 3d 236, 236-37; 530 N.E.2d 382, 387-88 (Ohio 1988).

Represented by new counsel, petitioner appealed to Ohio's Ninth District Court of Appeals, raising twenty-four assignments of error. On March 4, 1987, the Court of Appeals upheld petitioner's conviction and sentence. *State v. Greer*, No. 12258, 1987 WL 7769 (Ohio Ct. App. Mar. 4, 1987). The Ohio Supreme Court affirmed. *State v. Greer*, 39 Ohio St. 3d 236; 530 N.E.2d 382 (Ohio 1988), *reh'g denied*, 40 Ohio St. 3d 711, 534 N.E.2d 851 (Ohio 1988), *cert. denied*, 490 U.S. 1028 (1989).

On November 15, 1989, petitioner filed a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21. The trial court denied the petition in a one-page journal entry based upon the doctrine of res judicata. Journal Entry, June 22, 1990 (J.A. at 2408). The Court of Appeals reversed and remanded, however, in order to afford the trial court the opportunity to issue a more detailed opinion. *State v. Greer*, No. 14696, 1991 WL 21548 (Ohio Ct. App. Feb. 20, 1991). The Ohio Supreme Court subsequently declined to accept jurisdiction. *State v. Greer*, 61 Ohio St. 3d 1422, 574 N.E.2d 1093 (Ohio 1991) (unpublished table decision).

On June 11, 1991, the court of common pleas complied with the directive of the Court of Appeals, once again denying relief on all grounds largely based upon its finding of res judicata. Findings and Order, June 11, 1991 (J.A. at 2939). The Court of Appeals affirmed. *State v. Greer*, No. 15217, 1992 WL 316350 (Ohio Ct. App. Oct 28, 1992). The Ohio Supreme Court declined to accept jurisdiction. *State v. Greer*,

### I.  Constitutionality of Ohio Death Penalty Statute

Petitioner challenges the constitutionality of the Ohio death penalty on a number of fronts.

#### a.  cruel and unusual punishment

He first argues in a general way that the death penalty is cruel and unusual because it is excessive. The Supreme Court has rejected this challenge. *See Gregg v. Georgia*, 428 U.S. 153, 179-82 (1976).

#### b.  arbitrary application

Petitioner next attacks the arbitrary manner in which the death penalty is applied. Among other things, he notes that race seems to play a part in its application, pointing to the disproportionate number of African-Americans on death row.

We deny petitioner habeas relief on this claim because he has failed to demonstrate a constitutionally significant risk of racial bias affecting the Ohio capital sentencing process.

#### c.  not least restrictive punishment

Petitioner contends that the death penalty "is neither the least restrictive nor an effective means of deterrence."

The imposition of the death penalty has been consistently upheld by the Supreme Court. Until the Court holds to the contrary, we are bound by its decisions.

#### d.  failure to require intent to kill

Petitioner argues that Ohio's death penalty scheme is defective because it does not require proof that a defendant had a "conscious desire to kill." The Supreme Court has held that such a conscious desire to kill is not required in order to impose the death penalty. *See Tison v. Arizona*, 481 U.S. 137, 158 (1987) (major participation in the felony committed, combined with reckless indifference to human life, enough to

the state trial court's evidentiary rulings are not cognizable in a federal habeas except when the violation of a state's evidentiary rule has resulted in the denial of fundamental fairness, thereby violating due process.

. . . .

Greer asserts that the exclusion denied him his right of due process, yet, he has not convinced this Court that the exclusion was in violation of Ohio's evidentiary rules nor has he articulated how the exclusion of the statement was prejudicial to him by showing how the outcome of his trial or sentencing would have been affected by the inclusion of the statement.

Memorandum of Opinion, Aug. 7, 1998, at 66-67 (J.A. at 210-11).

Petitioner contends that the admissibility of hearsay testimony "is an issue of constitutional dimension." In support, he cites an unpublished order of this court that only incidentally involves a hearsay issue and certainly does not stand for the proposition advanced by petitioner. *Paris v. Turner*, No. 97-4719, 1999 WL 357815 (6th Cir. May 26, 1999) (order holding that defendant had established cause and prejudice for failure to comply with an Ohio rule of procedure).

Petitioner also argues that "[t]he trial court's disparate treatment of Mr. Roth's statements was so unfair and biased as to deny Mr. Greer his right of due process as guaranteed by the Fifth and Fourteenth Amendments." However, as already noted, his only examples of this bias are culled from the testimony of Mrs. Malone.

We affirm the district court.

66 Ohio St. 3d 1446, 609 N.E.2d 172 (Ohio 1993) (unpublished table decision).

Petitioner then filed an application for delayed consideration pursuant to *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (Ohio 1992), which alleged, *inter alia*, that appellate counsel had rendered ineffective assistance by failing to raise thirty-four assignments of error on direct appeal. The Court of Appeals denied the application, concluding that petitioner had failed to meet the high standard required by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), for claims of ineffective assistance. *State v. Greer*, No. 12258 (Ohio Ct. App. Feb. 5, 1993) (unreported), Journal Entry (J.A. at 3802). The Ohio Supreme Court affirmed. *State v. Greer*, 67 Ohio St. 3d 1485, 621 N.E.2d 407 (Ohio 1993) (unpublished table decision), and the United States Supreme Court denied certiorari. *Montgomery v. Ohio*, 511 U.S. 1078 (1994).

After exhausting his state-court avenues of redress, petitioner initiated the habeas corpus proceeding now before us on December 2, 1996, raising twenty-eight grounds for relief. The district court denied the petition on August 7, 1998 and thereafter denied a motion to alter or amend the judgment.

## II.

### A.  Standard of Review

This court reviews a district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. *See Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Because petitioner filed his habeas petition on December 2, 1996, review of the state court's decision is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997). As amended, 28 U.S.C. § 2254(d) provides as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Court explained the effect of this section in these terms:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

town. Lock your doors tonight, and if Rick comes over I'm going to have to kill him."

. . . .

Our position is that that testimony, if elicited from this witness, goes to show that Roth was afraid of someone other than Paul Greer; he was specifically afraid of Rick, whoever Rick was, and he was so concerned about the presence of Rick that he expressed that in terms of telling a neighbor to be weary [sic] of Rick being back in town.

The prosecution contended that admission of the statement constituted hearsay. The court agreed, telling defense counsel "If you know there are people [who were in debt to Roth], bring them in."

Before the Ohio Supreme Court, petitioner had contended that the statement, "Rick is back in town," fell under Ohio Rule of Evidence 803(3), which provides a hearsay exception for statements that show an "existing, mental, emotional, or physical condition." The Court rejected this argument:

The decedent simply does not state that he was afraid of anyone. Insofar as there may be derivative inferences favorable to appellant, it must be admitted that they would require the jury to speculate and not merely infer. Since appellant did not present his defense upon the basis that Rick McMillan killed the decedent, it cannot be contended that the statements were anything other than irrelevant, possessing a potential for misleading the jury.

*Greer*, 39 Ohio St. 3d at 244; 530 N.E.2d at 394.

The district court likewise rejected petitioner's claim, although on somewhat different grounds given the habeas context:

It is a long-standing principle that federal courts are to give deference to state trial court decisions regarding the application of state law. Specifically, claims based upon

opinion of the trial court is completely devoid of any reference to such report. Accordingly, there has been no showing that the prepared victim impact statement played any part in the sentencing deliberations of either judge or jury. *State v. Post* (1987), 32 Ohio St.3d 380, 383, 513 N.E.2d 754, 758. Thus, the trial court presumably considered only that evidence which was relevant, probative and competent on the issue. *Id.*, at 384, 513 N.E.2d at 759.

*Greer*, 39 Ohio St. 3d at 248; 530 N.E.2d at 398 (footnote added). The district court observed that, because the Ohio Supreme Court found that res judicata barred consideration of the issue, its consideration was outside the scope of federal habeas review.

We affirm the district court.

### H. Hearsay

Petitioner claims that certain of the trial court's rulings on hearsay objections were significant enough to implicate the Confrontation Clause. These objections occurred during the testimony of Mrs. Malone, a neighbor with whom Mr. Roth had dined on the evening of his murder.

The prosecution elicited from Mrs. Malone that Mr. Roth intended to evict petitioner. However, a review of the relevant portion of the transcript reveals that, although the trial court overruled the objection, Mrs. Malone was instructed that her testimony must "be of your own personal knowledge."

Second, during a conference in chambers, defense counsel indicated that they wished to pursue the following line of inquiry:

We know that Rita Malone made a statement to an investigating officer wherein she stated that she knew on the 27th – she had a conversation with Roth, and Roth told her quote, words to this effect, "Rick is back in

529 U.S. at 412-13. (O'Connor, J.); *see also Machacek v. Hofbauer*, 213 F.3d 947, 952-53 (6th Cir. 2000), *cert. denied*, 121 S.Ct. 808 (2001).

Furthermore, under the AEDPA, the district court may only hold an evidentiary hearing under the following circumstances:

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e). With these precepts in mind, we turn to the vexing doctrine of procedural default.

## B.  Procedural Default

As with virtually all capital cases, petitioner challenges the district court's conclusion that many of his claims have been procedurally defaulted due to his failure to raise them at the appropriate juncture of his state-court proceedings.

As the district court noted, even constitutional errors will not be noticed if an adequate and independent state-law ground exists for upholding the conviction or sentence. *See Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). This court's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule. First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin*, 785 F.2d at 138. Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id.* Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. "This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Id.* And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*; *see also Scott v. Mitchell*, 209 F.3d 854, 864 (6th Cir.), *cert. denied*, 121 S.Ct. 588 (2000).

Furthermore, even when a petitioner fails to show cause and prejudice, a court must still consider whether special circumstances require that that showing be waived. Specifically, a court may notice an otherwise defaulted claim if it concludes that petitioner has shown by clear and convincing evidence that but for constitutional error no

---

*i.  instructions that the trial court should have given*

Petitioner concludes by arguing that the trial court failed to give certain instructions. These instructions were not requested by trial counsel, however, nor were they raised on direct appeal.

Accordingly, we find that they were procedurally defaulted.

## G.  Victim Impact Statement

Petitioner contends that the trial court received a victim impact statement in violation of the Eighth Amendment. *But see Payne v. Tennessee*, 501 U.S. 808 (1991) (overruling earlier precedent and holding that victim impact statements can play a role in the sentencing phase of a capital trial). This statement was never shown to the jury and nowhere does the trial court refer to it as playing a role in the imposition of petitioner's sentence.

Petitioner first raised this issue in his direct appeal to the Ohio Supreme Court, which rejected the claim for these reasons:

Appellant also asserts in proposition of law number fifteen that a victim impact statement was utilized in the trial court's sentencing considerations in violation of the recent pronouncement contained in *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440.[5] This proposition of law was neither briefed nor argued before the court of appeals. It is accordingly waived and our consideration thereof is barred by the doctrine of *res judicata*.

By way of commentary only, we note that the report at issue was prepared. However, at no time was it ever entered into evidence. It was not given to the jury or specifically commented upon in their presence. The

---

[5]The Supreme Court explicitly overruled *Booth* in *Payne, supra.*

### e. sympathy instruction

The court also told the jury, "You must not be influenced by any consideration of sympathy or prejudice." Petitioner contends that sympathy is a legitimate consideration in capital cases. As already discussed, this court has previously noted "an instruction that the jury should not be swayed by 'mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling'" is constitutional. *Mapes*, 171 F.3d at 416.

### f. quantity of aggravating circumstances

As already quoted, the court told the jury, "It is not only the quantity of aggravating circumstances versus the quantity of the mitigating factors which is to be the basis of your decision. The quality or importance of the mitigating factors and the aggravating circumstances must also be considered." In petitioner's view, because the state only proved one aggravating circumstance, this instruction worked to his disadvantage.

This issue has been procedurally defaulted.

### g. unanimity instruction

Petitioner argues that the trial court implied that the jury must be unanimous when imposing a life sentence when, in fact, unanimity is required only for a death verdict.

This issue has been procedurally defaulted.

### h. unanimity before considering life

Petitioner next argues that the jury instructions led the jury to believe that it must unanimously reject a death sentence before it could consider life.

This issue has been procedurally defaulted.

reasonable juror would have found him guilty of the crime, or, if the constitutional error occurred during the penalty phase of the trial, that no reasonable juror would have sentenced petitioner to death. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

For its part, Ohio has the following long-standing rule:

Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 *et seq.*, Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.

*State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104 (Ohio 1967) (syllabus). Moreover, this court has rejected contentions that Ohio has failed to apply its *Perry* rule consistently. *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1999).

Of course, "[w]hether a state court rested its holding on procedural default so as to bar federal habeas review is a question of law that we review de novo." *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir.), *cert. denied*, 121 S.Ct. 623 (2000). We look to the last explained state-court judgment when answering this question. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)).

### III.

With this general understanding of procedural default by way of background, we now turn to the individual claims raised by petitioner.

### A. Ineffective Assistance of Trial Counsel

The most troublesome aspect of capital cases often involves claims of ineffective assistance of counsel. This case is no different. The question, of course, is not whether counsel was

topnotch, but whether he or she functioned at the level required by the Sixth Amendment:

We apply a two-part test to determine whether a criminal defendant was denied effective assistance of counsel. First, we ascertain whether counsel's performance was professionally deficient; second, we determine whether the deficient performance prejudiced the defendant's constitutional interests. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997); *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996).

In assessing counsel's performance, we inquire whether "counsel's representation fell below an objective standard of reasonableness," as measured by "prevailing professional norms." *Rickman*, 131 F.3d at 1154 (quoting *Strickland*, 466 U.S. at 687-88, 104 S.Ct. 2052). This objective reasonableness standard encompasses strategic litigation choices that simply fail to bear fruit. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. To establish prejudice, a defendant must demonstrate a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rickman*, 131 F.3d at 1155 (quoting *Strickland*, 466 U.S. at 693-94, 104 S.Ct. 2052).

*Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000).

Before looking at the merits of petitioner's ineffective assistance claim, however, we must first determine whether the issue has been procedurally defaulted. Unlike the federal system, Ohio courts generally require defendants to raise ineffective assistance of trial counsel on direct appeal:

Where a defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record,

for the proposition that the State cannot seek to minimize the jury's sense of responsibility for determining the appropriateness of death. However, as discussed earlier, the trial court's instruction represents a correct statement of Ohio law.

### c. reasonable doubt

Petitioner contends that, by instructing the jurors on reasonable doubt in the penalty phase, the trial court "established an unconstitutional presumption of the propriety of the death sentence" because the jury had already found petitioner guilty beyond a reasonable doubt at the guilt phase. Once again, no objection was made at trial.

This issue has been procedurally defaulted.

### d. outweigh

The court also instructed the jury on how to "weigh" aggravating and mitigating factors:

Outweigh. To outweigh means to weigh more than, to be more important than. The existence of mitigating factors does not preclude or prevent the death sentence if the aggravating circumstances outweigh the mitigating factors.

It is the quality of the evidence that must be given primary consideration by you. The quality of the evidence may or may not be compensurate [sic] with the quantity of the evidence; that is, the number of witnesses or exhibits presented in this case.

Once again, no objection was made at trial, nor was the issue raised on direct appeal.

This issue has been procedurally defaulted.

### b. *instruction on theft*

Petitioner feels that the trial court should have instructed the jury on theft as an alternative to aggravated robbery. The record reveals that no request for this instruction was made by counsel and the Ohio Supreme Court therefore reviewed for plain error and found none. *Greer*, 39 Ohio St. 3d at 246-47; 530 N.E.2d at 396.

We affirm based upon the reasoning of the Ohio Supreme Court.

### 2. *Penalty Phase Instructions*

### a. *burden of proof instruction*

The court instructed the jury as follows:

> The burden of proof. The State of Ohio has the burden of proving beyond a reasonable doubt that the aggravating circumstances which the Defendant, Paul W. Greer, was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.
>
> The Defendant shall have the burden of going forward with evidence of any factors in mitigation of the imposition of the sentence of death.

No objection was made by counsel. Not only do we find no error with this instruction, it has been procedurally defaulted.

### b. *non-binding nature of jury recommendation*

Petitioner objects to this instruction: "A jury recommendation to the Court that the death penalty be imposed is just that, a recommendation, and it is not binding upon the Court. The final decision as to whether the death penalty shall be imposed upon the Defendant rests upon the Court." Petitioner contends that this instruction runs afoul of *Caldwell v. Mississippi*, 472 U.S. 320 (1985), which stands

*res judicata* is a proper basis for dismissing defendant's petition for postconviction relief.

*State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169 (1982) (syllabus). In the present case appellate counsel failed to raise the ineffective assistance of trial counsel on direct appeal. The issue was first raised by counsel in a petition for post-conviction relief.[1] The trial court and Court of Appeals each held that the claim was barred by the doctrine of res judicata because petitioner had not raised his claim on direct appeal. *See* Decision and Entry, Ohio Ct. App., No. 15217, at 11-12 (J.A. at 3414-15). The district court agreed with this reasoning. Memorandum of Opinion, August 7, 1998, at 48-49 (J.A. at 192-93).

The district court's decision on this issue gives rise to the following reservation. *Cole* makes an exception for cases in which the competence of trial counsel can only be resolved by resorting to evidence outside the record. The petition for post-conviction relief includes forty-six exhibits, the majority of which were affidavits from individuals who allegedly had information favorable to petitioner but who were not contacted by trial counsel. They include family members who attest that they could have placed petitioner's personal history and character in a favorable context; Larry Dehus, an expert who would have disputed the state's evidence regarding bloody footprints found near the victim's body; James Eisenberg, a psychologist who would have testified concerning the shortcomings of trial counsels' preparation for mitigation; trial counsel, who indicate that their notes reveal that certain jurors excused by the prosecution were black; and a juror who states that evidence of petitioner's background would have "been helpful and may have affected the jury's decision."

---

[1] The post-conviction petition was filed by Scott Jelen, an assistant state public defender, who had assumed the representation of petitioner from court-appointed appellate counsel.

While the probative value of this evidence is difficult to assess in retrospect, it seems clear that this material and the arguments that logically flow from it are outside the trial record. Nonetheless, the Ohio Court of Appeals reached a contrary conclusion:

> The gist of Greer's claim is that his representation was ineffective in failing to raise these issues and/or bring forth this evidence at trial. By claiming that this evidence is *dehors* the record, Greer attempts to circumvent the application of *res judicata*. But he fails to understand that evidence is not outside the record simply because it was not raised in the original proceedings. The matters Greer raises were capable of being raised and reviewed in his direct appeal.

*State v. Greer*, No. 15217, 1992 WL 316350 (Ohio Ct. App. Oct. 28, 1992) (J.A. at 3414-15) (citations omitted). Although counsel could certainly have raised an ineffective assistance of counsel claim on direct appeal, the precise arguments advanced in his petition for post-conviction relief require significant supplementation of the trial court record. The Ohio Court of Appeals relies on a single, unreported case, *State v. Wayne*, 1991 WL 172914 (Ohio Ct. App. Sept. 4, 1991), to support its statement that "evidence is not outside the record simply because it was not raised in the original proceeding." Yet, in *Wayne*, the appellant neglected to take a direct appeal and instead raised the claim that his plea agreement did not conform to the indictment in a petition for postconviction relief. Certainly, procedural default under those circumstances is warranted because the documents in question -- the plea agreement and indictment -- were in the record. In this case, however, potential evidence from witnesses who never appeared at trial, as well as the testimony of trial counsel respecting trial tactics, is by definition *dehors* the record. For that reason, it seems that the Ohio Court of Appeals may have mistakenly relied upon procedural default in denying petitioner's ineffective assistance of trial counsel claim.

determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.

*Wainwright v. Witt*, 469 U.S. at 424-26 (footnotes omitted). Nothing in *Witt* supports petitioner's position that the court must precisely phrase its instructions to a potential juror to include the word "consider." In our view, the court followed the correct standard: it attempted to discern during voir dire whether a prospective juror could follow the law with respect to the death penalty.

### F. Jury Instructions

Petitioner raises numerous challenges to jury instructions.

#### 1. Guilt Phase Instructions

##### a. murder instruction

According to petitioner, the district court erred in giving this instruction: "In the event you find the Defendant not guilty of aggravated murder, you will further continue and consider the lesser included offense of murder." No contemporaneous objection was made, nor was the issue raised on direct appeal. It was, however, included in the post-conviction petition.

This claim has been procedurally defaulted.

intercede in this situation deprived Mr. Greer of a fair jury trial."

This claim was likewise procedurally defaulted.

### 3.  *questioning of jurors about death penalty*

In explaining the duty of the jury in a capital case to a prospective juror, the trial court posed this question:

> [I]f the jury finds the State did prove beyond a reasonable doubt the aggravating factors outweigh the mitigating factors, you will then be required to recommend to the Court that the Defendant receive the death sentence.
>
> If you find yourself in that situation, could you make such a recommendation to the Court?  That recommendation being, could you make the recommendation that the Defendant receive the death penalty?

Petitioner contends that the court misstates the standard, which should be whether a juror would *consider* imposing the death penalty.  Other jurors were likewise excused for cause after they expressed reservations about the death penalty.

The Supreme Court has provided the following guidance on this point:

> We . . . take this opportunity to clarify our decision in *Witherspoon*, and to reaffirm the . . . standard from *Adams* [*v. Texas*] as the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment.  That standard is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  We note that, in addition to dispensing with *Witherspoon's* reference to "automatic" decisionmaking, this standard likewise does not require that a juror's bias be proved with "unmistakable clarity."  This is because

Despite these reservations, the procedural default rule delineated by *Perry* and *Cole* is a matter of state law. Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law. *Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000) ("Principles of comity and finality equally command that a habeas court can not revisit a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal."). Nevertheless, when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded.  As explained below, however, we need not decide the extent to which, if any, federal courts may reach the merits of constitutional claims that a state court improperly found to be procedurally defaulted because petitioner's ineffective assistance of appellate counsel claim necessarily forces us to review the performance of trial counsel.

### B.  *Ineffective Assistance of Appellate Counsel*

As the district court recognized, however, petitioner's claim regarding ineffective assistance of trial counsel is inextricably connected to his claim of ineffective assistance of appellate counsel, a claim that was not procedurally defaulted.  In *Mapes, supra,* this court faced a similar claim of ineffective assistance of both trial and appellate counsel in an Ohio capital case.  There, too, we held that any claim of ineffective assistance of trial counsel had been procedurally defaulted. Despite this default, we observed that an examination of trial counsel's performance was required in order to determine whether appellate counsel had been constitutionally ineffective.  *Mapes*, 171 F.3d at 419.

For that limited reason, we now turn to petitioner's allegations that his trial counsel rendered constitutionally ineffective assistance.  If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel

cannot be ineffective for a failure to raise an issue that lacks merit.[2]

Given the exigencies and complexity of capital cases, it is likely that even experienced trial counsel will commit oversights. Of course, errors of tactics or omission do not necessarily mean that counsel has functioned in a constitutionally deficient manner. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Instead, this Court must determine whether counsel made a "reasonable decision that makes particular investigation unnecessary." *Id.* at 690.

Petitioner alleges that trial counsel committed serious errors during the guilt phase of his trial. These alleged errors include failure to 1) contact prospective prosecution witnesses; 2) investigate allegations that the victim was afraid of a man named "Rick"; 3) obtain an expert to challenge the conclusions of the coroner; 4) determine whether petitioner's alibi – that he was watching the movie, "Children of the Corn," on television – was credible; 5) communicate adequately with petitioner; 6) object to the conduct of voir dire; 7) object to prosecutorial misconduct; 8) request an instruction for the lesser included offense of theft; 9) object to various jury instructions; and 10) object to the introduction of gruesome photographs.

---

[2] Although current counsel for petitioner points to a number of errors allegedly committed by state appellate counsel, his brief properly focuses upon the failure to raise ineffective assistance of trial counsel. This position is understandable given the record in this case and also in light of this court's many recent decisions vacating death sentences due to ineffective assistance. *See, e.g., Skaggs v. Parker*, 235 F.3d 261 (6th Cir. 2000); *Abdur'Rahman v. Bell*, 226 F.3d 696, 719 (6th Cir. 2000) (dissent); *Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 542 (6th Cir. 2000) (dissent), *cert. denied*, 121 S.Ct. 786 (2001); *Mapes, supra*; *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997); *Groseclose v. Bell*, 130 F.3d 1161 (6th Cir. 1997); *Austin v. Bell*, 126 F.3d 843 (6th Cir. 1997); *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995).

Defense counsel asked for the court to reserve ruling until the juror could ascertain whether someone could replace her. The court declined, however, and excused the juror for cause.

The second juror, Beverly Peoples, presented a note from a doctor stating, "She is suffering with hypertension and should not be asked to serve as a special juror at this time because of her physical condition." (Mrs. People's worked for the doctor who provided the letter.) The trial court noted on the record that the doctor called the court and "was concerned that the office is not running as smoothly as he would prefer it in Ms. People's absence."

Defense counsel questioned Mrs. Peoples, who conceded that she was under a lot of stress at work. She also admitted that she would prefer not to serve for both health and religious reasons: "I just don't feel that I should be in judgment of someone else regardless of the crime."

The prosecutor noted that the court had already excused two other jurors for hypertension. Over defense counsel's objection, the court excused the juror for medical reasons.

In petitioner's view, "Given the treatment of white jurors, the only logical explanation for the excusal of Mrs. Reynolds and Mrs. Peoples is their race or gender."

The district court noted that this issue was not raised on direct appeal even though it was based on the record and was therefore procedurally defaulted pursuant to the *Perry* rule. We agree with that assessment. Moreover, the trial court had ample, race-neutral reasons to excuse both jurors for cause.

### 2.    *juror excused before questioning*

Petitioner objects to the fact that the jury commissioner excused a potential juror before the court or counsel had an opportunity to question him based upon a letter from an employer. Even though this prospective juror's race is unknown, petitioner contends that "the trial court's failure to

petitioner was allowed to introduce personal characteristics in mitigation does not mean that the prosecution may not "strongly and forcefully argue that such mercy need not be extended, and that the jury should not be roused to a sympathetic reaction." *Id.*

In our view, the Ohio Supreme Court correctly resolved this issue. We affirm the denial of relief.

### d. improper characterization of mitigating factors

During trial, defense counsel introduced evidence of three mitigating factors listed in Ohio Rev. Code § 2929.04(B). However, the prosecution discussed all seven mitigating factors included in the statute. According to petitioner, the jury quite possibly interpreted the lack of a mitigating factor to be aggravating, or at least to have diminished the mitigating factors that did exist. No case law is cited in support other than for the general proposition that courts must minimize the risk that death will be imposed in an arbitrary and capricious manner.

This contention is without merit.

### E.  Jury Selection

Petitioner contends the trial court made numerous errors in conducting voir dire.

### 1.   excusing two black jurors for cause

He first argues that the court improperly excused two black, female prospective jurors for cause.

The first juror, Sarah Reynolds, was excused after she presented a letter from the executive director of the YWCA to the court stating, "Sarah Reynolds is assuming a new assignment with the Central YWCA as of June 10, 1985. The assignment is extremely essential to the YWCA's approaching downtown relocation." The court first made sure that there was no one else to handle her responsibilities.

These arguments need not detain us long because, even assuming that trial counsel was not reasonably effective, petitioner cannot establish prejudice. There is almost no chance that the verdict would have been different but for counsel's allegedly defective performance since evidence of guilt was overwhelming. In light of the facts introduced during trial, we conclude that there is no reasonable probability that different actions or a different strategy by counsel could have altered the verdict.

That said, counsel's performance during the penalty phase presents a much closer question that will require remand to the district court for further proceedings. First, it appears that trial counsel did not begin preparing for the mitigation phase of the trial until after conviction, as reflected in attorney billing notations. Under circumstances where a finding of guilty cannot come as a surprise, failure to anticipate such a finding so as to adequately prepare for the sentencing phase is constitutionally impermissible. *See Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995). In *Glenn*, another Ohio capital case, this court vacated the death sentence based upon ineffective assistance of counsel during the penalty phase:

Although both of Glenn's court-appointed lawyers were experienced criminal defense attorneys, and although they had some eight months to get ready for sentencing proceedings necessitated by a verdict that could hardly have come as a surprise to them, evidence presented to the state trial court at a post-sentence hearing showed that the lawyers made virtually no attempt to prepare for the sentencing phase of the trial until after the jury returned its verdict of guilty. It was obvious, or should have been, that the sentencing phase was likely to be "the stage of the proceedings where counsel can do his or her client the most good," *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989) -- yet Glenn's counsel failed to make any significant preparations for the sentencing phase until after the conclusion of the guilt phase. This inaction was

objectively unreasonable. "To save the difficult and time-consuming task of assembling mitigation witnesses until after the jury's verdict in the guilt phase almost insures that witnesses will not be available." *Blanco v. Singletary*, 943 F.2d 1477, 1501-02 (11th Cir.1991), *cert. denied*, 504 U.S. 943, 112 S.Ct. 2282, 119 L.Ed.2d 207 (1992).

. . . .

The reason for the paucity of mitigation evidence, as we have said, was lack of preparation on the part of Glenn's lawyers. The lawyers made no systematic effort to acquaint themselves with their client's social history. They never spoke to any of his numerous brothers and sisters. They never examined his school records. They never examined his medical records (including an emergency room record prepared after he collapsed in court one day) or records of mental health counseling they knew he had received. They never talked to his probation officer or examined the probation officer's records. And although they arranged for tests, some months before the start of the trial, to determine whether he was competent to stand trial, they waited until after he had been found guilty before taking their first step -- or misstep, as we shall explain presently -- toward arranging for expert witnesses who might have presented mitigating evidence on John Glenn's impaired brain function.

*Id.* at 1207-08. As already noted, this court has vacated a number of death sentences in recent years based upon inadequate penalty phase preparation by trial counsel. *See, e.g., Carter v. Bell*, 218 F.3d 581, 595-96 (6th Cir. 2000) ("While we understand the great burdens on appointed counsel in capital cases and the often limited financial support they receive for investigation and discovery, justice requires that counsel must do more than appear in court or argue to the jury."); *Grossclose v. Bell*, 130 F.3d 1161, 1166 (6th Cir. 1997) (failure to prepare adequately for mitigation -- four

*Mapes*, 171 F.3d at 414-415, albeit in the context of a challenged jury instruction.

The district court is affirmed.

*c. sympathy*

The prosecutor also asked the jury to set aside sympathy in reaching a decision:

What you have to be careful of, ladies and gentlemen, and Judge Spicer will instruct you on this, that you do not decide this case based on bias, sympathy or prejudice. . . .

In other words, if you go into the jury room and you feel sorry for Paul Greer because he has an alcohol problem, you feel sorry for Paul Greer because . . . he has borderline intelligence, or you feel sorry for Paul Greer because he had so many children in his family, or that he only went to a certain level of education, if you feel sorry for him, that isn't mitigation.

Of course, it is axiomatic that a jury cannot be precluded from considering virtually any aspect of defendant's character in mitigation. *See Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (the sentencer in capital cases must be permitted to consider any relevant mitigating factor) (citing *Lockett v. Ohio*, 438 U.S. 586 (1978)).

Once again, our recent decision in *Mapes* comes close to presenting this issue. In that case, defendant had asked for a "merciful discretion" instruction. We noted, however, that the Supreme Court had upheld an instruction to the effect that the jury should not be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." *Mapes*, 171 F.3d at 416 (citing *California v. Brown*, 479 U.S. 538, 93 L.Ed.2d 934 (1987)).

The Ohio Supreme Court rejected petitioner's claim because "sympathy *alone* is not a mitigating factor." *Greer*, 39 Ohio St. 3d at 250; 530 N.E.2d at 399. Just because

As [the other prosecutor] told you, we do not seek the death penalty lightly. We don't frivolously come into a courtroom asking for that penalty.

The Ohio Supreme Court considered petitioner's arguments and concluded, "[W]hatever residual error inheres in the making of the statements at issue, it would appear that such error was harmless." *Greer*, 39 Ohio St. 3d at 252; 530 N.E.2d at 401. The district court likewise concluded, "Given the largely undisputed evidence supporting Greer's conviction, this Court cannot find that the cumulative effect of the two issues so infected Greer's trial with unfairness as to result in a denial of his due process rights." Memorandum of Opinion, Aug. 7, 1998, at 70 (J.A. at 214).

We affirm the district court.

b.   *comment that jury's decision on death only a recommendation*

During closing arguments, the prosecutor stated, "Your result then, if you should find that the aggravating circumstances outweigh the mitigating factors, is to recommend to Judge Spicer that the death penalty be imposed in this case." Petitioner contends that this comment runs afoul of *Caldwell v. Mississippi*, 472 U.S. 320 (1985), which stands for the proposition that the State cannot seek to minimize the jury's sense of responsibility for determining the appropriateness of death. *Id.* at 341.

*Caldwell* is distinguishable from the instant case. In *Caldwell*, the jury was told, "Your job [*i.e.*, decision on death] is reviewable . . . the decision you render is automatically reviewable by the Supreme Court." *Id.* at 325-26. However, in the case before us, the prosecutor's comment represents a correct statement of Ohio law. *See* Ohio Rev. Code § 2929.03(D)(2). On direct appeal, the Ohio Supreme Court held that this distinction correctly disposed of the *Caldwell* claim. *Greer*, 39 Ohio St. 3d at 253; 530 N.E.2d at 402. Moreover, this court recently rejected a similar claim in

witnesses); *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997) (vacating sentence because defense counsel did not reasonably investigate the facts of the case or reasonably determine that an investigation was not necessary). Furthermore, last term, the Supreme Court found counsel constitutionally ineffective for failing to look into defendant's "nightmarish childhood" and mental limitations in preparation for mitigation. *Williams,* 529 U.S. at 395.

Attached to the petition for post-conviction relief was an affidavit by James Eisenberg, a psychologist who has consulted in numerous criminal cases, including some forty capital cases. He reviewed petitioner's file and identified several areas of inadequate preparation: failure to interview family members; failure to review school records that would reflect petitioner's intellectual development; and failure to call any mental health experts.

Furthermore, in his deposition, trial counsel, Robert Baker, conceded that preparation for the mitigation phase began after the jury returned a verdict. With regard to contacting relatives, he recalled:

Let me put it to you this way: If someone would have called, I would have talked to them. And if they would have had something favorable to say or been willing to get involved, we certainly would have done it. I've heard that everybody's now saying they called, but I just don't think that's the case.

As for defense counsel's theory of mitigation, it was "to try and save Paul's life. . . . He had a tough life and was disadvantaged." Nonetheless, defense counsel did not consider requesting appointment of a psychologist, but instead relied upon the doctor who was helping to prepare the probation report. As his testimony reveals, Baker had little grasp of the details of petitioner's life. Instead, he relied upon the pre-sentence investigation, which he hoped "would be helpful in sentencing. Most of it turned out to be detrimental." Moreover, this reliance on the state's psychologist was misplaced. As Dr. Kathleen P. Stafford

testified, "I let the Judge know that I would have to take a very limited role and be able to address only the one mitigating factor, which was similar to the sanity standard, and that that would have to be the role that I would take in the matter." She went on to testify that defense counsel was aware of her limited role.

During his deposition, Baker also stated, "We had been after Paul for some time to provide us with family, relatives, people that would be of some benefit to him, and he never gave us any information about people." However, he went on to indicate that he knew several things that merited further investigation: that, as a youngster, petitioner had seen his father murdered before his own eyes; that he had many brothers and sisters; that he had been incarcerated as a youth; that he had been in foster care; that he shot a cousin at age 13; and that he was alcoholic. None of these leads appears to have been pursued with anything approaching vigor. As this court has observed,

> Certainly, trial counsel must commit a serious error to be judged unconstitutionally ineffective. However, when a client faces the prospect of being put to death unless counsel obtains and presents something in mitigation, minimal standards require some investigation.

*Mapes*, 171 F.3d at 426.

Defense counsel did put on a case in mitigation, however, which the Ohio Supreme Court summarized it this way:

> Factors introduced by appellant for mitigation purposes were that appellant was raised in an environment of poverty, his parents died when he was quite young, his father was killed in front of him, he has a relatively low I.Q. and is uneducated, he has a history of alcoholism and unemployment, his conviction was based on circumstantial evidence, and appellant testified that he is innocent. Obviously, such evidence is relevant under factor number seven and is also part of the history, character and background of the offender. Thus, none of

> And I guarantee you, ladies and gentlemen, if that was incorrect, if that was a disputable opinion, these defense attorneys would have had another expert or two or three or four testify in this case and tell you that, and there is not one that came forward.

According to petitioner, this commentary unlawfully attempted to shift the burden of proof to him.

This circuit has explicitly held that, "If a defendant testifies . . . , a prosecutor may attack his credibility to the same extent as any other witness." *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999) (citing cases). Of course, such commentary must be supported by reasonable inferences from the record and not simply represent the prosecutor's own opinion. *Id.* Here, there is no dispute that petitioner's testimony changed. Hence, the "chameleon" comment fell within the bounds of permissible comment.

While the prosecutor's remark concerning petitioner's lack of an expert to refute the coroner's testimony may have been ill-advised, one cannot say that "the impropriety was so flagrant that it require[s] reversal because only a new trial could correct the error." *Id.* at 552.

### 4.  *improper remarks during sentencing phase*

Petitioner objects to several of the comments made by the prosecution during the sentencing phase.

#### a.  *consideration of the heinous nature of the crime and decision to seek death penalty*

During closing arguments, the prosecutor made the following comments:

> The aggravating circumstances in this case are heinous. The death of Louis Roth, the robbery that occurred, are heinous aggravating circumstances.

on direct appeal and the district court concluded, as had the courts of Ohio, that it had been procedurally defaulted.

We affirm based upon procedural default.

### 3.  *improper closing argument in guilt phase*

During her closing argument in the guilt phase of the trial, the prosecutor made several remarks that petitioner contends deprived him of a fair trial.  The district court denied relief because petitioner failed to raise them on direct appeal and thus they are procedurally barred.   We agree that this claim has been procedurally defaulted.

Even were we to reach the merits of the claim, however, our decision would not be altered. Among other things, the prosecutor told the jury:

> Defendant varies his stories and his ability to shade the evidence, if you want, like a chameleon. . . .

> . . . .

> I was thinking last night when I was working on my argument that of all the witnesses that have testified and how he had changed what he had told previously to meet or to mesh in with what these people were saying . . . .

Petitioner contends this argument was improper.  He also finds fault with the following commentary on the coroner's testimony:

> Dr. Cox testified in this case. He is an expert witness, and in this case an exceptional expert witness.  His testimony was – and you saw him here on the witness stand say it and demonstrate it – that the cuts, first of all, were caused by a knife, not by glass.

> . . . .

---

the first six mitigating factors has any relevance. We find such evidence completely overshadowed by the demonstrated aggravating circumstance. Moreover, we note that nothing in appellant's history or background indicates that the sentences are other than appropriate.

*Greer*, 39 Ohio St. 3d at 255; 530 N.E.2d at 404. Furthermore, Dr. Stafford's report contains much of the background information that petitioner alleges should have been investigated, hence the state argues that it was reasonable for defense counsel to rely upon it.

As we indicated earlier, petitioner has procedurally defaulted his ineffective assistance of trial counsel claim. The preceding discussion, therefore, is relevant "only insofar as it bears on the question whether appellate counsel was unconstitutionally ineffective in failing to raise it." *Mapes*, 171 F.3d at 427.  *Mapes* provides us with the following guidance concerning our approach to this issue:

> The cases decided by this court on the issue of ineffective assistance of appellate counsel suggest the following considerations that ought to be taken into account in determining whether an attorney on direct appeal performed reasonably competently.

> (1)   Were the omitted issues "significant and obvious"?

> (2)   Was there arguably contrary authority on the omitted issues?

> (3)   Were the omitted issues clearly stronger than those presented?

> (4)   Were the omitted issues objected to at trial?

> (5)   Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Manifestly, this list is not exhaustive, and neither must it produce a correct "score"; we offer these inquiries merely as matters to be considered.

*Mapes*, 171 F.3d at 427-28 (citations omitted). In our view, given the record, the ineffective assistance of trial counsel presented a "significant and obvious" claim that a competent attorney in a capital case would almost certainly present on appeal. While appellate attorneys should always attempt to winnow out their best issues for presentation to the courts, in a capital case, which by definition involves the ultimate societal sanction, appellate attorneys must err on the side of inclusion, particularly when, as here, there appear to exist a significant number of facts to support the claim.

In addition to the relative strength of the ineffective assistance claim, several other of the factors suggested by *Mapes* favor petitioner's position. First, the legal viability of an ineffective assistance claim had been firmly established by *Strickland*. Second, at the time of the direct appeal trial counsel had not testified in a collateral proceeding concerning

tantamount to a due process violation. *See Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000).

In order to establish improper use of peremptory challenges, a defendant must first make out a prima facie case, which involves showing that he is a member of a cognizable racial group and that the prosecutor has used peremptory challenges to remove members of defendant's race from the venire. Once this showing has been made, the prosecutor must offer a race-neutral explanation for challenging the jurors: "the government's proffered reason need not be particularly persuasive, or even plausible, so long as it is neutral." *Harris*, 192 F.3d at 586. The court then decides whether defendant has proven that racial animus motivated the use of the peremptory challenge. In this case, the prosecutor was never afforded the opportunity to provide a race-neutral explanation because defense counsel did not object to specific strikes.

We affirm the district court's conclusion that this issue has been procedurally defaulted because it was not raised upon direct appeal. While petitioner seeks to evade this result by raising the issue in the context of ineffective assistance of appellate counsel, we decline his invitation. The trial record would not cause competent appellate counsel to consider raising a *Batson* challenge and, even if counsel had the benefit of the information developed during subsequent proceedings, our review of those materials convinces us that appellate counsel's decision not to raise the *Batson* issue fell well within the range of effective assistance as defined by *Strickland*.

2. *use of peremptories to strike jurors who expressed hesitation about death penalty*

The next alleged instance of "prosecutorial misconduct" is the state's decision to use peremptory challenges to excuse two jurors who expressed hesitation about imposing the death penalty. Both men indicated during voir dire that they could follow the court's instructions but that they felt the death penalty should be used sparingly. This issue was not raised

right to counsel when mounting collateral attacks upon convictions in state court).

We affirm that issue, based upon the reasoning of the district court.

## D. *Prosecutorial Misconduct*

Petitioner raises a number of issues under the rubric of prosecutorial misconduct.

### 1. Batson *challenge*

Although not prosecutorial misconduct in the traditional sense, petitioner contends that the decision of the prosecutor to use peremptory challenges to excuse three potential black jurors ran afoul of *Batson v. Kentucky*, 476 U.S. 79 (1986). There are weaknesses in this argument, however. First, defense counsel made no contemporaneous objection to the strikes.[3] Second, defense counsel testified at a subsequent deposition that he did not perceive that the strikes were based on racial animus.[4] Third, counsel did not raise this issue on direct appeal, resulting in procedural default under the *Perry* rule discussed earlier. And, fourth, there is nothing in the record to suggest that the alleged inappropriate prosecutorial conduct rendered the trial fundamentally unfair to a degree

---

[3] He did, however, make a motion prior to voir dire asking the court to require the state to provide a reason each time it used a peremptory to strike a black juror. The prosecutor replied that the Ohio code imposed no such requirement and to do so "would wholly blur the distinction between a challenge for cause and a peremptory challenge." The trial court overruled defense counsel's motion based upon Ohio Rev. Code § 2945.21 and Ohio Criminal Rule 24. The trial occurred one year before the *Batson* decision.

[4] The jury was comprised of ten whites and two blacks. However, simply because blacks are ultimately seated on a jury does not preclude a *Batson* challenge. *United States v. Harris*, 192 F.3d 580, 587 (6th Cir. 1999).

---

trial strategy. Third, neither of petitioner's appellate attorneys had ever prepared a death penalty appeal. And, fourth, the omitted issues were not dealt with in the context of other assignments of error.

In the case before us, appellate counsels' failure to raise ineffective assistance on direct appeal is further complicated by petitioner's allegation of conflict. Robert Baker and Robert Lowery acted as court-appointed trial counsel. After the verdict, Baker and Lowery were replaced by two other attorneys: Peter Cahoon and Richard Kasay. New counsel filed their appellate brief on March 31, 1987. One month later, while the appeal was still pending, Peter Cahoon joined Baker's firm. In petitioner's eyes, this violated his right to unconflicted counsel.

While the courts below found that these circumstances did not give rise to a conflict, this court has recently issued a decision, *Combs v. Coyle*, 205 F.3d 269 (6th Cir.), *cert. denied*, 121 S.Ct. 623 (2000) that involves a similar claim. In that capital case, petitioner had two attorneys on appeal, one of whom had represented him at trial. As here, appellate counsel failed to raise certain ineffective assistance of trial counsel claims on direct appeal. He sought to avoid procedural default by arguing that, because he was not represented by "unconflicted" counsel on direct appeal, the rule enunciated in *Cole* did not apply to him. We agreed and explained our decision in these terms:

> Because there is ambiguity surrounding the issue and because the State cannot point to a case firmly establishing as of the time of Combs's appeal that ineffectiveness claims must be brought on direct appeal when trial counsel also serves as co-counsel on appeal, we are unable to conclude that a firmly established state procedural rule existed. Indeed, at the time of Combs's appeal was filed it would have been entirely reasonable to conclude that Combs's new counsel did not meet the *Cole* standard of being "in no way enjoined from asserting the ineffectiveness of appellant's trial counsel,"

*Cole*, 443 N.E.2d at 171, and thus that res judicata would not apply.

*Combs*, 205 F.3d at 277. Obviously, *Combs* is factually distinguishable from our case because neither of petitioner's two appellate attorneys represented him at trial. We therefore decline to extend *Combs* to the situation before us so as to excuse the procedural default of his ineffective assistance of trial counsel claim. Nevertheless, the remote possibility that appellate counsel might have felt constrained in raising that claim, coupled with the concerns already discussed, counsel caution with respect to petitioner's ineffective assistance of appellate counsel claim.

The Ohio Court of Appeals' opinion denying petitioner's ineffective assistance of appellate counsel claim provides scant substantive reasoning:

> Appellant has not met the standard set forth in *Strickland v. Washington* (1984), 446 U.S. 668, 687, to establish ineffective assistance of counsel. From the record we cannot find that the appellant was in any way prejudiced by appellate counsel's performance, that is, that his conviction would have been set aside by this Court.

*State v. Greer*, No. 12258, (Ohio Ct. App. Feb. 5, 1993) (unreported), Journal Entry at 2-3 (J.A. at 3803-04). Furthermore, petitioner was not afforded an evidentiary hearing to develop his ineffective assistance of counsel claim by either state courts or the district court. We are, of course, mindful that the AEDPA, 28 U.S.C. § 2254(e), permits a district court to hold an evidentiary hearing only in limited circumstances. *See* 28 U.S.C. § 2254(e)(2). However, in *Williams* the Supreme Court explained these limitations in a manner that we read to favor an evidentiary hearing in this case. Concerning the statute's command that no evidentiary hearing shall occur when a petitioner has "failed to develop the factual basis of a claim," the Court offered the following interpretation:

> Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.

*Williams*, 529 U.S. at 432. Furthermore, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id*. at 435.

In the case before us, petitioner pursued his ineffective assistance of appellate counsel claim with proper diligence, raising it first -- albeit prematurely -- in his petition for post-conviction relief and then in his motion for delayed reconsideration. Both of these pleadings requested an evidentiary hearing, which was never afforded by the Ohio courts. Consistent with *Williams v. Taylor*, therefore, we conclude that petitioner is not precluded from an evidentiary hearing as he exercised the necessary diligence in attempting to establish the factual record in state court.

Accordingly, we remand this matter to the district court with instructions to accord petitioner an evidentiary hearing in which to establish whether appellate counsel rendered constitutionally ineffective assistance with respect to the penalty phase of petitioner's trial.

### C. Ohio's Post-Conviction Scheme

Petitioner contends that Ohio's post-conviction scheme fails to provide defendants an adequate corrective process for reviewing claims of constitutional violations.

The district court concluded that habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief, relying upon *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings). Moreover, the Supreme Court has held that states have no constitutional obligation to provide post-conviction remedies. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (there is no constitutional