<u>NOT RECOMMENDED FOR PUBLICATION</u>
File Name: 05a0212n.06
Filed: March 24, 2005

**No. 04-1575**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


**WADDELL LEO FISHER,**

      **Petitioner-Appellant,**

**v.**

**DAVID SMITH, WARDEN,**

      **Defendant-Appellee.**

                             /

      **ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN**


**BEFORE:**     **BOGGS, Chief Judge; CLAY, Circuit Judge; and WALTER, District Judge.**[*]

      **CLAY, Circuit Judge.** Petitioner, Waddell Leo Fisher ("Fisher"), appeals from the opinion

and order of the district court denying his petition, pursuant to 28 U.S.C. § 2254, for writ of habeas

corpus. Fisher was convicted in Michigan state court for assault with intent to murder, in violation

of M.C.L. § 750.83, second degree murder, in violation of M.C.L. § 750.317, and possession of a

firearm during the commission of a felony, in violation of M.C.L. § 750.227(b). Fisher contends

that his trial counsel was ineffective for failing to pursue an insanity defense, and that he should be

excused for procedurally defaulting that claim during state court proceedings because his appellate

_____

[*]The Honorable Donald E. Walter, United States District Judge for the Western District of
Louisiana, sitting by designation.

counsel was also ineffective. Respondent, David Smith, Warden, argues in turn that the one-year statute of limitations for filing a habeas petition had expired before Fisher did so and that the district court should have denied relief under 28 U.S.C. § 2244(d).

We agree with Fisher that the statute of limitations period had not expired. However, regardless of whether the performance of Fisher's trial counsel was deficient, he cannot demonstrate prejudice as a result. Therefore, he cannot establish cause and prejudice to excuse his procedural default of his ineffective assistance of counsel claim, and we must **AFFIRM** the district court's denial of Fisher's petition for writ of habeas corpus.

## BACKGROUND

### I. Procedural History

Fisher was charged in the Recorder's Court for the City of Detroit with first-degree murder in the death of his eight-year old son, assault with intent to murder his wife, and possession of a firearm during the commission of a felony. On June 27, 1988, following a jury trial, Fisher was convicted of assault with intent to murder and the firearm charge. The jury was unable to reach a verdict on the first-degree murder charge, and Fisher subsequently pleaded guilty to second-degree murder.

On July 15, 1988, Fisher was sentenced to 100 to 150 years imprisonment for the second-degree murder conviction and 80 to 150 years imprisonment for the assault conviction to be followed by a mandatory two-year consecutive sentence for the firearm conviction. Fisher appealed his convictions and sentences to the Michigan Court of Appeals, which affirmed his convictions but remanded for re-sentencing. Fisher was re-sentenced, this time receiving twenty-eight to forty-two

years for the second-degree murder conviction, life imprisonment for the assault conviction, and two years for the firearm conviction. Fisher's new sentence was affirmed by the Michigan Court of Appeals on July 12, 1993. Fisher filed an application for leave to appeal to the Michigan Supreme Court on September 14, 1993; it was denied on February 15, 1994.

On April 23, 1997, Fisher filed a motion for relief from judgment in the Recorder's Court for the City of Detroit, asserting that his trial counsel was ineffective for failing to pursue a possible insanity defense, and that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. The motion for relief from judgment was denied on January 16, 1998. Fisher filed for leave to appeal in the Michigan Court of Appeals; he was denied on March 25, 1999. He then sought leave to appeal in the Michigan Supreme Court, which was denied on March 21, 2000. Both state appeals courts determined that Fisher had "failed to meet the burden of establishing entitlement to relief under M.C.R. [Michigan Court Rule] 6.508(D)," which will be discussed in more detail below.

Fisher filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 in the district court on June 2, 2000. Respondent filed a motion to dismiss the petition for failure to comply with the statute of limitations set forth in 28 U.S.C. § 2244(d). The district court referred this issue to Magistrate Judge Virginia Morgan, who on November 7, 2001 filed a report and recommendation that the petition be dismissed for the reasons advocated by Respondent. The district court declined to adopt the magistrate's report and recommendation and denied the motion to dismiss Fisher's petition, on the ground that Fisher was entitled to have equitable tolling applied in his case.

Respondent then filed a supplemental answer to Fisher's petition for writ of habeas corpus, which contended that the district court was barred from reviewing Fisher's petition because he had procedurally defaulted his claim of ineffective assistance of counsel by failing to raise it during his appeal as of right. The matter was reassigned to Magistrate Judge Steven Whalen, before whom an evidentiary hearing on Fisher's ineffective assistance of counsel claim was held on August 28, 2003. On November 3, 2003, Magistrate Judge Whalen filed a report and recommendation that a conditional writ of habeas corpus be granted with respect to Fisher's conviction for assault with intent to murder, but that a writ of habeas corpus be denied as to his conviction for second-degree murder.

The district court entered an order and opinion on March 31, 2004, denying Fisher's petition for a writ of habeas corpus. Fisher filed a notice of appeal to this Court on April 23, 2004.

## II.     Substantive Facts

### A.     Facts related to the offenses for which Fisher was convicted

The facts of the crimes for which Fisher was convicted are relevant here only insofar as they relate to his claim that his attorney was ineffective for failing to pursue an insanity defense, and will be discussed only briefly.

Fisher and his wife, Pansy Hairston, separated in May 1987, at least in part because Hairston was concerned about Fisher's drug abuse problem. When they separated, Hairston moved with their eight-year old son, Waddell Fisher III, to a house on Wilshire Street in Detroit. On the morning of October 12, 1987, Fisher knocked on the door of Hairston's home. Hairston was upstairs with her son, and told him to be quiet and ignore the knocks. Fisher entered the apartment on his own, and

confronted Hairston when she came downstairs. She asked Fisher to leave, and he told her that he had seen a man leaving her house at 5:30 that morning. He then told her he was going to kill her, their son, and himself, because if he could not have her, no one could. He pulled a gun out, and a struggle ensued in which the gun went off but did not hit anyone. Fisher then beat Hairston with the gun. Hairston testified that the next thing she remembered was lying in a neighbor's driveway.

When Detroit police entered Hairston's home, they found Fisher in a bedroom with his son, who was lying on a bed covered with a blanket. Fisher told police that he had killed Waddell III, who was stabbed to death. Fisher was still holding the knife. Over the course of a two-and-a-half hour conversation with police, Fisher, who was very emotional, stated that his plan was to kill his wife, son, and himself so that they could all be "together in the hereafter." Upon learning that his wife was still alive, Fisher said that his plan was ruined. Fisher stabbed himself in the chest several times during the conversation, and attempted to stab himself in the throat. After the arrival of Fisher's sister, police were able to convince him to put the knife down and to arrest him.

**B.      Facts Related to Petitioner's Claim of Ineffective Assistance of Counsel**

Jeffrey Edison ("Edison"), Fisher's trial counsel, testified at the evidentiary hearing held before the magistrate judge. Edison stated that he began practicing law in 1976, and that ninety-eight percent of his practice leading up to the time of Fisher's trial consisted of criminal defense trial work. He explained that he believed "something was at issue regarding [Fisher's] mental state" because of the circumstances surrounding the crime and the self-inflicted injuries, as well as the history of Fisher's marriage, his military service, and his substance abuse. Edison testified that on

the basis of conversations with Fisher, he determined that there was a possibility that an insanity defense could be viable in this case.

Edison also testified that he received a letter from Dr. Kliger, a psychologist who had treated Fisher on two occasions just weeks before the crime. Dr. Kliger indicated that Fisher had a history of substance abuse, depression, and hospitalization for alcohol and drug abuse, and diagnosed Fisher with cocaine use disorder, depressive neurosis, and histrionic personality disorder. Edison testified that the letter from Dr. Kliger led him to believe than an insanity defense was "something to at least pursue." Edison did file a notice of insanity defense, as required by Michigan statute.

Consequent to the filing of the notice of insanity defense, Fisher was twice examined by the Recorder Court's Psychiatric Clinic, once for criminal responsibility, and again for diminished capacity. The Recorder Court Clinic's Report on Criminal Responsibility found "no indication that Mr. Fisher was either mentally retarded or mentally ill as defined by statute at the time of the offense . . . he was capable of conforming his conduct to the requirements of the law and cognizant of the wrongfulness of his behavior." The Report on Diminished Capacity stated that "the clinical findings do not suggest that defendant Fisher's cognitive capacity was so diminished that he could not formulate the intent to commit the crimes in question."

Edison knew that the Recorder Court Clinic rarely found defendants not to be criminally responsible, particularly in homicide cases. Edison did not seek an independent evaluation on the question of insanity, although he knew that Fisher was entitled to one by statute. Edison initially testified that he was unable to recall why he did not get an independent evaluation of Fisher's mental state, but agreed that to adequately investigate the question of insanity he needed an independent

evaluation. He also noted that he would not have been able to present a valid insanity defense without his own expert. Subsequently, he stated that his failure to obtain an independent examination was not a matter of trial strategy. However, on cross-examination, he conceded that it was possible, given that he could not recall his thought process, that he had made a professional judgment to pursue a different defense.

Fisher's appellate attorney, Susan Meinberg ("Meinberg"), also testified. She stated that she reviewed the Recorder Court's Clinic reports in preparing the appeal, but did not pursue any other mental health information and did not seek an independent evaluation. She also knew that in the vast majority of cases, the Recorder Court's Clinic finds defendants criminally responsible, and that therefore a lawyer would need to seek an independent examination in order to assert an insanity defense. Meinberg stated that her failure to obtain an independent evaluation was not a matter of strategy, as far as she could recall. She had not decided that the issue had no merit.

Finally, the testimony of Dr. Steven Miller ("Dr. Miller") was presented. Dr. Miller is a forensic psychologist, licensed in the state of Michigan and formerly employed by the Recorder Court's Clinic. Dr. Miller conducted a criminal responsibility evaluation of Fisher at the request of his post-conviction counsel. He interviewed Fisher for about three and a half hours. Additionally, he reviewed the trial transcripts, the Recorder Court's Clinic reports, the letter from Dr. Kliger, Fisher's hospital records, Fisher's employment records, and Fisher's military records. Based upon his conversation with Fisher and his review of those records, Dr. Miller concluded that Fisher was legally insane at the time of the crime. He opined that Fisher met the definition of legal insanity

7

because he was mentally ill, he was unable to appreciate the wrongfulness of his conduct, and he was unable to conform his conduct to the requirements of the law.

More specifically, Dr. Miller testified that Fisher suffered a brief reactive psychosis at the time of the offense, which he described as a psychotic break due to extreme stress. He diagnosed Fisher with post traumatic stress disorder and borderline personality disorder. Dr. Miller further stated that he found the Recorder Court's Clinic reports contradictory, because they labeled Fisher's mental state as one of extreme emotion and described him as "out of control," which Dr. Miller testified were "hallmarks of legal insanity."

On cross-examination, however, Dr. Miller acknowledged that Fisher did not meet one of the diagnostic criteria for a "brief psychotic disorder": that the disorder last for at least one day. Dr. Miller also conceded that he had not reconciled significant facts with his opinion in this case: specifically, that Fisher armed himself before going to his wife's home and that he chose not to shoot his wife when he had an opportunity.

## DISCUSSION

**I.    The statute of limitations period did not expire prior to Fisher's filing of his petition for a writ of habeas corpus, and the district court's application of the doctrine of equitable tolling was therefore unnecessary.**

We review *de novo* a district court's determination that a statute of limitations for filing a petition for a writ of habeas corpus has expired. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002).

The district court found that the one-year statute of limitations set forth at 28 U.S.C. § 2244(d) and applicable in this case had expired before Fisher's petition was filed, for reasons that will be briefly summarized here. First, the district court noted that this Circuit has held that with

respect to convictions that became final prior to April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which set forth the one-year statute of limitations, the statute of limitations began to run on that effective date. Thus, Fisher's statute of limitations began to run on April 24, 1996. *Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999). That statute of limitations is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment." 28 U.S.C. § 2244(d)(2). In this case, then, it was tolled when Fisher filed his motion for relief from judgment in state trial court, on April 23, 1997, one day before the statute of limitations would have expired.

The district court concluded that the pendency of that state post-conviction application ended when the Michigan Supreme Court denied petitioner's application for leave to appeal on March 21, 2000, and that he therefore should have filed his petition before the district court the following day in order to comply with the statute of limitations. His petition was not filed until June 2, 2000. The district court then went on to find that although the statute of limitations had expired, the doctrine of equitable tolling applied in this case.

This Court's *en banc* decision in *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003) compels us to find that the district court's determination that Fisher's statute of limitations had expired, reached prior to the issuance of our opinion in *Abela*, was in error. In *Abela*, this Court determined that the statute of limitations under § 2244(d)(2) is tolled until the time for seeking review in the United States Supreme Court is expired, regardless of whether a petitioner has actually petitioned for

Supreme Court review.[1]  *Id*. at 171-73.  Therefore, the statute of limitations in Fisher's case did not actually expire until ninety days after the Michigan Supreme Court denied him relief on March 21, 2000.  His filing of his petition in the district court on June 2, 2000, was well within that ninety-day period, and was therefore timely.  Because the district court did not need to reach the issue of whether the equitable tolling doctrine applied, we decline to consider whether the district court correctly invoked that doctrine in this case.

**II.      Fisher's claim of ineffectiveness of trial counsel is procedurally defaulted.**

We review *de novo* a district court's determination that a claim has been procedurally defaulted in state court.  *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1998) (citing *Lusk v. Singletary*, 112 F.3d 1103, 1105 (11th Cir. 1997)).

**A.      Background**

Fisher contends that his trial counsel was ineffective for failing to pursue an insanity defense.  Fisher did not raise this issue in his appeal of right before the state courts.  When Fisher did raise this issue on collateral attack, the state appellate courts denied relief on the basis of Michigan Court

---

[1]The government argues that we are not bound by *Abela* because, in the government's view, the rule of *Abela* is dicta as applied to petitioners who did not seek review in the Supreme Court because the petitioner in *Abela* did seek review in the Supreme Court.  We reject the government's position.  This Court, *en banc*, explicitly rejected the distinction that the government attempts to draw between petitioners who did and did not seek review before the Supreme Court, and quite clearly *held* "that under section 2244(d), the statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until the conclusion of the time for seeking Supreme Court review of the state's final judgment on that application independent of *whether the petitioner actually petitions the Supreme Court to review the case*."  *Abela*, 348 F.3d at172-173 (emphasis added).

Rule 6.508(D), which prohibits a court from granting relief if certain procedural bars apply, including that the defendant "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence." This Court has previously held that application of M.C.R. 6.508(D) constitutes an independent and adequate state ground and results in procedural default, unless a petitioner can establish cause and prejudice to excuse the default. *McFarland v. Yukins*, 356 F.3d 688, 697-98 (6th Cir. 2004). The Supreme Court has explained that "cause for the default, and actual prejudice as a result of the alleged violation of federal law" suffice to excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Fisher argues that his appellate counsel's failure to raise a claim of ineffectiveness by trial counsel constitutes cause for the procedural default of his claim of ineffective assistance of trial counsel. "Attorney error may constitute cause if it rises to the level of constitutionally ineffective assistance of counsel." *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (citing *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996)); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986).

In *Willis*, we also addressed a petitioner's claim that his appellate counsel's failure to raise ineffectiveness of trial counsel was, itself, ineffective assistance of counsel which constituted cause to excuse the procedural default of the trial counsel ineffectiveness claim. We explained that appellate counsel can only be found ineffective for failing to raise a meritorious claim. *Willis*, 351 F.3d at 745 (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Therefore, we concluded that "in order to determine whether cause exists for the procedural default of [the petitioner's]

11

ineffective assistance of trial counsel claim, we must, ironically, consider the merits of that claim."

*Id.*

### B.      Fisher's ineffectiveness of trial counsel claim

#### i.      Standards for ineffective assistance of counsel

The standard for assessing claims of ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test is two-pronged: first, a defendant must show that his attorney's performance was deficient, and second, he must show that he was prejudiced by his counsel's deficient performance. *Id.* at 687-88.

An attorney's performance is not deficient unless it falls "below an objective standard of reasonableness." *Id.* at 688. This Court's review of an attorney's performance must be highly deferential; *Strickland* requires reviewing courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Where an attorney has made a strategic decision to pursue or not pursue a particular trial tactic "after thorough investigation of law and facts," that decision is "virtually unchallengeable." However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

A defendant seeking to prove prejudice under the second prong of *Strickland* must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This standard does not require a defendant to

12

show that it is more likely than not that the proceeding would have been different, but simply a "probability sufficient to undermine confidence in the outcome." *Id.*

### ii.     Regardless of whether his trial counsel's performance was deficient, Fisher cannot demonstrate prejudice.

We agree with the district court that Fisher cannot demonstrate prejudice as a result of the alleged deficiency of his trial counsel's performance. Consequently, there is no need for us to determine whether trial counsel's performance was deficient. *See id.* at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed").

However, before reaching a discussion of prejudice in this case, we pause to note that we specifically reject the government's argument that it would have been a reasonable trial strategy for Fisher's trial counsel not to pursue an insanity defense because the odds are so great that such a defense will fail. The government's generalized argument is tantamount to suggesting a *per se* rule that trial counsel's failure to pursue an insanity defense can never be deemed ineffective. Whatever the challenges of presenting a certain defense, when trial counsel is on notice that it is potentially viable, *Strickland* demands that he sufficiently investigate so as to make a reasoned decision about whether to present that defense to the jury. *See id.* at 690-91. If it is the government's position that such an investigation would not have yielded information supporting an insanity defense, that argument is appropriately directed to the prejudice prong of the *Strickland* inquiry.

13

With regard to the prejudice inquiry, we conclude that Fisher cannot show that there is a reasonable probability that the outcome of his trial would have been different if trial counsel had pursued an investigation on the issue of his sanity and obtained an independent evaluation of him. The testimony of Dr. Miller is insufficient to make this showing.

Dr. Miller's affidavit stated that Fisher experienced "a temporary brief reactive psychosis which rendered [him] unable to conform his actions to the requirements of the law."  However, as the district court points out, on cross-examination Dr. Miller conceded that Fisher did not actually meet all of the criteria for a brief reactive psychosis, as defined in the Diagnostic and Statistical Manual of Mental Disorders.  Dr. Miller also conceded that he did not factor into his opinion aspects of Fisher's behavior at and around the time of the crime that suggest he was not legally insane, including Fisher's having armed himself before going to his estranged wife's home, choosing not to shoot his wife when he had the opportunity, and waiting outside the home for some time before entering.

The district court appropriately concluded that "Dr. Miller's testimony is equivocal at best. On cross-examination, the foundation of his opinion proved to be unsound; there were significant facts omitted from his analysis which undermine his conclusion; and, it is not at all clear whether his apparent theory that Petitioner moved in and out of legal insanity during the ordeal has any objective merit."  Dr. Miller's testimony was insufficient to establish a reasonable probability that, but for trial counsel's deficient performance, the outcome of the trial might have been different.

**C.      Procedural default**

14

As previously explained, Fisher's argument that his procedural default should be excused is dependent on his demonstrating that he would have prevailed on his underlying ineffective assistance of trial counsel claim if his appellate counsel had presented that claim to the Michigan appeals courts. Because we disagree with Fisher's contention, on the ground that Fisher has not demonstrated that he was prejudiced by his trial attorney's allegedly deficient performance, we must also conclude that Fisher's ineffective assistance of counsel claim is procedurally defaulted.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Fisher's petition for writ of habeas corpus.