**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0598n.06**
**Filed: August 21, 2006**

**No. 04-2552**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DAVID BRADLEY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| THOMAS BIRKETT, Warden, | ) | District of Michigan |
| | ) | |
| Respondent-Appellee. | ) | |

Before:     BOGGS, Chief Judge; NORRIS and COOK, Circuit Judges.

PER CURIAM.  David Bradley, a Michigan state prisoner, appeals the denial of his petition for a writ of habeas corpus by the district court.

This case is before us for the second time.  In *Bradley v. Birkett*, 156 F. App'x 771 (6th Cir. 2005) (per curiam), we vacated the certificate of appealability ("COA") granted by the district court and remanded to the district court so that, in determining whether and to what extent to grant a COA, it would make an individualized assessment as to each of Bradley's habeas claims. The district court having done so, we now address Bradley's petition on the merits.  Finding all but one of Bradley's claims to be procedurally defaulted, and the one non-defaulted claim to be without merit, we AFFIRM the district court's denial of Bradley's petition for a writ of habeas corpus.

I

The evidence adduced at trial indicates the following. Bradley and Robbie Cootware were inmates at the Dickinson County Jail in Michigan. Bradley and Cootware planned and successfully executed an escape from the jail. On the night of March 8, 1998, Bradley lured a corrections officer, Timothy Guiguere, into his cell under the pretense that there was a water leak. Cootware and Bradley then beat Guiguere. Bradley, armed with a heavy steel soap dish that had been placed inside a sock, and Cootware, armed with a broom, chased Giguere, who had managed to get out of the cell, and rushed past corrections officer Vanessa Kuzak; Bradley threatened Kuzak and warned her to get back. Because Cootware had earlier learned the code to an exit door, they were able to open the exit door and escape through the garage.

After their escape, Bradley and Cootware proceeded to break into a number of trailers at camping sites, from which they took various items, including guns, knives, alcohol, and clothing. Police arrested Bradley and Cootware after chasing them from a trailer. Cootware testified that he and Bradley had planned to rob a bank and then flee to Mexico.

Following a jury trial in Dickinson County Circuit Court, Bradley was convicted of twelve felonies: escape from jail; conspiracy to escape from jail; assault with intent to commit great bodily harm; conspiracy to commit assault great bodily harm; four counts of breaking and entering; two counts of inducing a minor to commit a felony; conspiracy to commit bank robbery; and assaulting a prison employee.

Bradley appealed his convictions. The Michigan Court of Appeals vacated his conviction for escape from jail through violence (which the judgment had listed as assault, i.e., against a prison

employee) and affirmed the other convictions and sentences. The Michigan Supreme Court denied

his delayed application for leave to appeal.

Bradley then filed a motion for relief from judgment in the Dickinson County Circuit Court

in 2002. In that motion he asserted for the first time all but one of the federal constitutional claims

at issue here, arguing that ineffective assistance of appellate counsel established good cause for

failure to raise the issues in the appeal of right.[1] The trial court denied the motion, stating that "trial

error, if any, was harmless error that did not result in a miscarriage of justice; and the Court further

finds that the defendant has not established good cause for the claim that these errors were not raised

as issues in the appeal of right."

In one-sentence orders, the Michigan Court of Appeals and subsequently the Michigan

Supreme Court denied Bradley leave to appeal on the grounds that he had failed to meet the burden

of establishing entitlement to relief under Michigan Court Rule 6.508 and 6.508(D), respectively.

Michigan Court Rule 6.508(D) broadly pertains to motions for relief from judgment. *Abela v.*

*Martin*, 380 F.3d 915, 922 (6th Cir. 2004). It states that the "defendant has the burden of

establishing entitlement to the relief requested," M.C.R. 6.508(D), and provides, *inter alia*, that a

court

> may not grant relief to the defendant if the motion . . . alleges grounds for relief,
> other than jurisdictional defects, which could have been raised on appeal from the
> conviction and sentence or in a prior motion under this subchapter, unless the
> defendant demonstrates (a) good cause for failure to raise such grounds on appeal or

---

[1]In the motion for relief from judgment Bradley did not bring the insufficiency-of-the-evidence claim, which had previously been raised in the direct appeal.

in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief. . . .

M.C.R. 6.508(D)(3). This court has previously referred to Michigan Court Rule 6.508(D) as "the state analog to federal exhaustion." *Gonzales v. Elo*, 233 F.3d 348, 353 (6th Cir. 2000).

In 2003, Bradley filed a habeas corpus petition in the district court pursuant to 28 U.S.C. § 2254. The district court denied Bradley's petition for a writ of habeas corpus, finding all but one of his claims to be procedurally defaulted and the remaining claim, alleging insufficiency of evidence with respect to three counts, to be without merit.

II

In a habeas corpus proceeding, we review the district court's legal conclusions de novo and its factual findings for clear error. We review de novo the district court's procedural default rulings. We also review de novo the district court's determinations regarding a claim of ineffective assistance of counsel, which is a mixed question of law and fact. *Lott v. Coyle*, 261 F.3d 594, 606 (6th Cir. 2001).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to this case because Bradley filed his habeas petition after 1996. *See Gillard v. Mitchell*, 445 F.3d 883, 889 (6th Cir. 2006). Under AEDPA, we may not grant Bradley relief with respect to any claim that the state courts have decided on the merits unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. §§ 2254(d)(1) & (2). *See Tinsley v. Million*, 399 F.3d 796, 801-02 (6th Cir. 2005); *Abela v. Martin*, 380 F.3d 915, 924-25 (6th Cir. 2004).

Bradley acknowledges that only one of the federal constitutional issues he presents here, regarding sufficiency of evidence, was preserved for habeas review; the others were not preserved by trial or appellate counsel and were raised for the first time in the motion for relief from judgment. As stated above, the state trial court denied that motion on procedural grounds in language taken almost verbatim from Michigan Court Rule 6.508(D)(3); the Michigan Court of Appeals and the Michigan Supreme Court denied Bradley leave to appeal under Rule 6.508 and 6.508(D), respectively.

A federal habeas court may not review claims that a state court has declined to address due to petitioner's noncompliance with a state procedural requirement. *Howard v. Bouchard*, 405 F.3d 459, 475 (6th Cir. 2005) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). "Under the procedural default doctrine, [a] federal court is generally barred from considering an issue of federal law arising from the judgment of a state court if the state judgment rests on a state-law ground that is both independent of the merits of the federal claim and an adequate basis for the [state] court's decision." *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004) (internal quotation marks omitted) (quoting *Clinkscale v. Carter*, 375 F.3d 430, 435 (6th Cir. 2004)). As this court has recently noted, "[i]t is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims." *Howard,* 405 F.3d at 477 (citing *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000), and *Munson*, 384 F.3d at 315). As such, and because

the other parts of the test set forth by this court in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), for determining whether a habeas claim has been procedurally defaulted by petitioner's failure to observe a state procedural rule are also met–the state procedural rule is applicable to Bradley's claims, Bradley failed to comply with it, and it was actually enforced–his claims are procedurally defaulted. *See Howard*, 405 F.3d at 477-79; *Munson*, 384 F.3d at 313-15; *Willis v. Smith*, 351 F.3d 741, 744-45 (6th Cir. 2003).

A procedural default may be excused if Bradley demonstrates cause for the default and prejudice resulting from the default. *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004); *Willis*, 351 F.3d at 745; *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). "It is well-settled that when a state prisoner has 'defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred' unless the petitioner can show cause for the default and prejudice because of it, or a fundamental miscarriage of justice." *Abela,* 380 F.3d at 921 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Bradley argues that ineffective assistance of appellate counsel excuses his procedural default.

Deficient performance by counsel may constitute cause for procedural default if it is constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *Howard*, 405 F.3d at 478; *Munson*, 384 F.3d at 316; *Willis*, 351 F.3d at 745. To establish ineffective assistance under *Strickland*, Bradley must show both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *See Tinsley*, 399 F.3d at 802. That is, Bradley "must prove both that his counsel's representation 'fell below an objective standard of reasonableness,' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" *Munson*, 384 F.3d at 316 (quoting *Strickland*, 466 U.S. at 688, 694)

(internal citations omitted). "Counsel's failure to raise an issue on appeal is ineffective assistance

only if there is a reasonable probability that inclusion of the issue would have changed the result of

the appeal." *Howard*, 405 F.3d at 485 (citing *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001)). This

court has identified eleven factors to consider when evaluating a claim of ineffective assistance of

counsel:

> (1) Were the omitted issues 'significant and obvious'?
> (2) Was there arguably contrary authority on the omitted issues?
> (3) Were the omitted issues clearly stronger than those presented?
> (4) Were the omitted issues objected to at trial?
> (5) Were the trial court's rulings subject to deference on appeal?
> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> (7) What was the appellate counsel's level of experience and expertise?
> (8) Did the petitioner and appellate counsel meet and go over possible issues?
> (9) Is there evidence that counsel reviewed all the facts?
> (10) Were the omitted issues dealt with in other assignments of error?
> (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Burton*, 391 F.3d at 774.

This court "ha[s] held that 'appellate counsel cannot be ineffective for a failure to raise an

issue that lacks merit.'" *Willis*, 351 F.3d at 745 (quoting *Greer*, 264 F.3d at 676). In determining

whether Bradley's appellate counsel rendered ineffective assistance of counsel, and thus whether

cause exists to excuse Bradley's procedural default, we "consider the merits of th[ose] claim[s]."

*Ibid*. S*ee also Fisher v. Smith*, 126 F. App'x 275, 280-83 (6th Cir. 2005).

III

A.

Bradley argues that the prosecutor committed misconduct amounting to a due process violation when he elicited testimony from three witnesses, including Robbie Cootware, regarding their plea-based convictions stemming from the events underlying the charges against Bradley, and then reiterated Cootware's plea-based convictions during closing argument. Bradley argues that the prejudice caused by the prosecutor's alleged misconduct was "exacerbated" by what Bradley calls an improper limiting instruction from the judge. The trial judge gave the following instruction:

> You have heard testimony that Robbie Cootware, Julie Tomasi, and Derrick Dixon made an agreement with the Prosecutor about charges against them in exchange for their testimony in this trial. You're to consider that evidence only as it relates to their credibility or believability and as it tends to show their bias or self-interest.

Defense counsel did not question the witnesses about the guilty pleas. However, defense counsel did refer to Cootware's guilty pleas during closing argument, and suggested that Cootware's motivation to plead guilty may have been a desire to reduce his sentence.

In order to determine whether Bradley's appellate counsel was constitutionally ineffective in failing to raise this issue on direct appeal–so as to excuse Bradley's procedural default of it–we inquire whether the prosecutorial-misconduct issue was meritorious. "To be cognizable" on habeas review, prosecutorial misconduct "must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Gillard*, 445 F.3d at 897 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), which in turn quotes *Donnelly v. DeCristoforo*, 416 U.S. 637, 643 (1974)). "[F]our factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally

presented to the jury, and (4) whether other evidence against the defendant was substantial." *Gillard*, 445 F.3d at 897. (internal quotation marks and citation omitted).

The guilty plea or conviction of a co-defendant is generally inadmissible at trial, and is not admissible as substantive evidence of the defendant's guilt, but "may be introduced into evidence if the co-conspirator or co-defendant testifies at trial, so that the factfinder will have appropriate facts on hand to assess the witness's credibility." *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) (citing *United States v. Blandford*, 33 F.3d 685, 709 (6th Cir. 1994)). In *United States v. Christian*, 786 F.2d 203 (6th Cir. 1986), this court quoted from *United States v. Halbert*, 640 F.2d 1000, 1005 (9th Cir. 1981):

> [w]hen the prosecution examines the codefendant as its witness in support of its case-in-chief, a question about the guilty plea is legitimate as the purpose is to support the reasonableness of the witness' claim to first-hand knowledge because of admitted participation in the very conduct which is relevant. The fact a witness has formally admitted personal responsibility enhances the circumstances adding up to that witness' believability.
>
> The prosecutor may also wish to place the plea before the jury so as to blunt defense efforts at impeachment and dispel the suggestion that the government or its witness has something to hide.

In *Halbert*, the Ninth Circuit noted that a prosecutor may not, for example, suggest in closing argument that the jury use the plea for an improper purpose, clearly offer the plea as substantive evidence of guilt, or disproportionately emphasize or repeat the subject. *Halbert*, 640 F.2d at 1005.

This court has stated that "[w]hen a guilty plea or conviction is introduced into evidence, the district court is required to give a cautionary instruction to the effect that the jury may use the conviction or guilty plea only to determine the testifying witness's credibility." *Sanders*, 95 F.3d

at 454 (citing *Blandford*, 33 F.3d at 709). *See also United States v. Modena*, 302 F.3d 626, 631 (6th Cir. 2002). The trial court's instruction, as quoted above, was adequate in that regard.

As stated above, it is not improper for a prosecutor to introduce evidence of a testifying coconspirator's or codefendant's guilty plea in order for the jury to assess fully the credibility of the witness. We agree with the district court that the prosecution's elicitation of such evidence in this case did not amount to misconduct. The district court suggested that the prosecutor's reference to Cootware's plea-based convictions in closing argument may have been improper, however, given that Bradley did not cross-examine the witnesses about their pleas. Yet the district court found that, if such impropriety did occur, it was not so egregious as to deny Bradley a fair trial. We agree. Even if the prosecutor's comments during closing argument reiterating Cootware's guilty pleas were improper, they did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *See Gillard*, 445 F.3d at 897. It is highly unlikely, especially in light of the trial court's limiting instruction, that the prosecutor's restatement of Cootware's guilty plea during closing argument would mislead the jury or prejudice the accused. While the remarks were deliberate, and restated evidence that the prosecution had already elicited, they did not unduly dwell on the plea, and did not propose or imply that the jury consider the plea as substantive evidence of Bradley's guilt.

We find no merit to Bradley's claim that the prosecutor committed misconduct that rose to the level of a due process violation regarding the guilty pleas of Cootware, Tomasi, and Dixon. Appellate counsel's failure to raise the meritless claim on direct appeal cannot excuse the procedural default.

B.

Bradley argues that his trial counsel provided ineffective assistance of counsel in failing to object to the prosecutor's elicitation of and references to the witnesses' guilty pleas and, consequently, that his appellate counsel should have raised an ineffective assistance of counsel claim on appeal. As discussed above, however, the prosecutorial misconduct claim lacks merit, so Bradley's trial counsel's failure to object was not constitutionally deficient performance, and appellate counsel's failure to raise an ineffective assistance of counsel claim in connection with the guilty pleas cannot constitute either cause or prejudice so as to overcome the procedural default.

C.

Anticipating that the charge of felon in possession of a firearm would require evidence of Bradley's prior felony conviction for breaking and entering, the state trial court suggested that Bradley's counsel stipulate that he had committed a prior felony, thus keeping the nature of the prior felony from the jury. Among the various crimes with which Bradley was charged were several counts of breaking and entering. As the trial court noted, Bradley's counsel refused the court's suggestion.

Bradley argues that his trial counsel's refusal to so stipulate constituted ineffective assistance of counsel. To support his claim of ineffective assistance of trial counsel, Bradley points to *Old Chief v. United States*, 519 U.S. 172, and its statement, in the context of its discussion of Federal Rule of Evidence 403, that "[w]here a prior conviction was for [a crime] similar to other charges in a pending case the risk of unfair prejudice would be especially obvious." *Old Chief*, 519 U.S. at

185. *Old Chief*, however, involved a defendant's rejected offer to stipulate to an unspecified prior felony, not a rejection by a defendant of such a stipulation.

In this case, the district court rejected trial counsel's failure to stipulate as a basis for Bradley's ineffective assistance of counsel claim, stating that Bradley's attorney may have wished to have the prior breaking and entering conviction specified to prevent speculation that it had been a more serious crime. *Strickland* requires us to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Particularly because Bradley was charged with numerous crimes more serious than breaking and entering, it might have been sound strategy for his counsel to refuse to stipulate to a "prior felony," with no further information, and thus allow the information that the prior felony was only for breaking and entering.

Bradley does not make a sufficient showing here to overcome the presumption that *Strickland* requires us to indulge. As "indirect evidence" that Bradley's trial counsel had no strategy at all, Bradley points to vague and ambiguous statements by his trial attorney during motions and sentencing. It is unclear that trial counsel's statements actually refer to the disclosure of the specific prior offense rather than to the jury's awareness of the fact that he had a prior felony, much less that they indicate lack of a strategy.

Even assuming that the conduct of Bradley's trial attorney in refusing the stipulation did fall below an objective standard of reasonableness, Bradley fails to show the second part of the *Strickland* test, that the deficiency was "so serious as to deprive the defendant of a fair trial, a trial

whose result is reliable." *Strickland*, 466 U.S. at 687. Bradley draws attention to a statement made by the trial judge, after querying the prosecutor as to the evidence of Bradley's alleged breaking and entering of the Urbany camp, denying Bradley's motion for directed verdict on that charge: "Very skinny, but I'm going to deny the motion." Bradley does not show a reasonable probability that, but for his trial attorney's refusal to stipulate to the admission of an unspecified felony, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The evidence of Bradley's guilt introduced at trial was such that, as the district court noted, it "borders on the frivolous" to argue that if the jury had not been informed of the specific nature of Bradley's prior offense that they would not have found him guilty of any of the charges that they did. Bradley's claim that his trial attorney rendered ineffective assistance of counsel by refusing the court's suggestion of a stipulation as to his prior felony thus lacks merit, and his appellate counsel's failure to raise it cannot excuse the procedural default.

## D.

During its deliberation, the jury sent a note to the trial judge asking about the availability of testimony of two witnesses, including Cootware. The judge ultimately instructed the jury that the transcripts were not available and would not be available "in the foreseeable future." The judge thus possibly ruled contrary to Michigan Court Rule 6.414(J) and *People v. Howe*, 221 N.W.2d 350 (Mich. 1974), which preclude a judge from informing the jury that the transcripts would never be available. Bradley argues that his trial counsel's failure to object to the trial court's response amounted to constitutionally ineffective assistance of counsel.

*Strickland* states that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. The testimony about which the jury inquired was highly inculpatory. As a matter of strategy, Bradley's trial counsel may have preferred that the jury not review the transcripts. And Bradley has not demonstrated a reasonable probability that the outcome of the trial would have been different if Bradley's trial counsel had objected to the judge's ruling. Bradley's ineffective assistance of counsel claim on this issue is without merit.

E.

Bradley asserts that the trial court "denied petitioner's Sixth Amendment right to an informed jury when it effectively advised the jury [that] transcripts of Cootware's testimony would never be available." As discussed immediately above, the trial court's statement to the jury regarding the transcripts may have violated Michigan state law. Yet Bradley cannot demonstrate a federal constitutional right to have the jury provided with transcripts of witness testimony. Those federal cases that discuss the issue of readbacks and transcript availability do so under the rubric of the court's supervisory authority over federal criminal trials, not on constitutional principles, and in any event do not establish a uniform rule. *Compare United States v. Betancourt*, 838 F.2d 168, 175 (6th Cir. 1988) ("the furnishing of transcripts to a jury is generally well within the district court's discretion"), *United States v. Padin*, 787 F.2d 1071, 1076 (6th Cir. 1986) (noting that whether to re-read testimony is within the discretion of the judge, and that the judge ought to take into account, *inter alia*, the difficulty of complying with the jury's request), and *United States v. Portac, Inc.*, 869 F.2d 1288, 1295 (9th Cir. 1989) (disfavoring rereading testimony to jurors during their

deliberations), *with United States v. Criollo*, 962 F.2d 241, 244 (2d Cir. 1992) (expressing a "preference for making readbacks available to juries.").

"[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted). Bradley's claim lacks merit.

F.

Bradley argues that the trial court denied him his rights to due process and to confront witnesses against him when, citing hearsay, it refused to admit into evidence, or to allow Bradley's attorney to cross-examine Cootware about the contents of, two letters written by Cootware, one to Bradley and the other to prisoner Shawn Moore. Bradley's lawyer subsequently tried to have Moore testify about the letters, specifically stating that the purpose of doing so was for impeachment only. The judge again refused to allow admission of the letters on the basis of hearsay. Bradley asserts that the letters contained statements that would have impeached Cootware's trial testimony, e.g., that in the letter to Bradley, Cootware wrote that he could not remember the events in question.

Federal habeas review of state court evidentiary rulings is extremely limited. *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005) (citing *Waters v. Kassulke*, 916 F.2d 329, 225 (6th Cir. 1990)). In this case it appears that the evidence that Bradley sought to have admitted, but was not allowed to, went to the general credibility of the witness–which is not protected by the Sixth Amendment–rather than "toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand," which is protected under the Sixth Amendment. *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)).

Even if a Sixth Amendment violation did occur, however, such violation is subject to harmless error review. *Jordan*, 397 F.3d at 363. "When reviewing state court decisions for harmless error in a collateral appeal this court applies the harmless error standard set out in *Brecht v. Abrahamson*, which holds that a habeas petitioner must establish the trial error had a 'substantial and injurious effect or influence in determining the jury's verdict.' 507 U.S. 619, 637 . . . (1993)." *Id*. at 363-64. *See also Oldham v. Kentucky*, 488 U.S. 227, 232 (1988); *Neder v. United States*, 527 U.S. 1, 18 (1999); *Gilliam v. Mitchell*, 179 F.3d 990, 994-95 (6th Cir. 1999); *Norris v. Schotten*, 146 F.3d 314, 329-31 (6th Cir. 1998). While Cootware's testimony was central to the prosecution's case, Bradley was allowed to impeach Cootware through other means, including prior false statements to police and prior convictions; Cootware's testimony was corroborated, at least circumstantially and often directly, by other evidence on material points; and the prosecution's overall case against Bradley was strong. The error, if any, was harmless. The challenge is without merit.

## G.

Bradley argues that his appellate counsel's failure to raise a claim of prosecutorial misconduct concerning alleged tampering with evidence provides cause to excuse his default of that claim. According to Bradley, after he requested a jury view of the jail, the prosecutor requested a delay and then took the opportunity secretly to place in the jail's shower room a replica of the soap dish used in the assault. Bradley's trial counsel moved for a new trial on the basis of this alleged "tampering." The trial counsel submitted the affidavit of a prisoner who swore that the shower room did not contain a soap dish in the days before or after the jury view. The trial court denied the

motion without a hearing, pointing out that no one highlighted the presence of the soap dish during the view.

The district court found no misconduct on the part of the prosecutor, assuming he had placed the dish in the shower, because that would "simply have restored the shower room to its condition before the escape, a circumstance that would render the jury's visit more, not less, useful in the trial's search for truth."

While we are less sanguine than the district court that, if indeed the prosecutor had placed the shower dish in the shower, no misconduct took place, it is patently clear that the action does not rise to the level of a constitutional deprivation by "so infect[ing] the trial with unfairness as to result in a denial of due process." *See Gilliard*, 445 F.3d at 897. The soap dish was not pointed out during the jury view; no one disputes that the dish accurately represented the one that had been in the shower at the time of the jail break; the soap dish was described in detail during testimony; and in the context of the trial as a whole, the jury's seeing the replaced soap dish in the shower can have had only a negligible impact, if any impact at all, on its verdict.

## H.

Bradley argues that the prosecutor violated his due process right to a fair trial when he elicited information about Bradley's past drug dealing, financial resources, and threats against Cootware. Bradley challenged the prosecutor's conduct in state court, but only as a matter of state law, and thus failed to preserve a federal due process claim. Bradley argues, as he does with respect to all of the procedurally defaulted claims, that ineffective assistance of appellate counsel excuses the default. Yet the underlying claim is without merit.

Bradley faults the prosecutor for asking witness Derrick Dixon, who held money for Bradley while the latter was in jail, what Bradley did for money, to which the witness responded in part that Bradley sold "drugs and stuff." Bradley also faults the prosecutor for reiterating during closing argument that Bradley did not have a job but had money, and for eliciting from Cootware and a police deputy that Bradley threatened Cootware.

Evidence that Bradley threatened Cootware is admissible under Michigan and federal law as evidence of his guilt. *See People v. Scholl*, 556 N.W.2d 851, 856 (Mich. 1996); *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). The prosecutor did not engage in misconduct by eliciting that information.

Second, as the Michigan Court of Appeals noted in its analysis under state law, the prosecutor's question to Dixon did not appear aimed to bring out character information that would suggest, e.g., that if Bradley did not have regular employment then he was predisposed to commit crime. Nor did the prosecutor question Dixon further about Bradley's alleged drug dealing or reference that part of Dixon's testimony. Furthermore, both the Michigan Court of Appeals and the district court noted that Bradley's defense counsel had inquired about Bradley's financial circumstances and employment on cross-examination, apparently in order "to establish [trial counsel's] theory that defendant had financial resources available, irrespective of the source of the money, such that he did not agree to rob a bank, but merely sought to flee prison in order to avoid facing additional charges pending in other jurisdictions."

Finally, even if the prosecutor's question and remarks did amount to misconduct, they were not so flagrant as to deny Bradley's right to a fair trial. It is not obvious that the prosecutor aimed

purposefully to introduce or emphasize "bad man" evidence; the remarks were not extensive, pronounced, or persistent; and the evidence against Bradley was very strong. The underlying claim of Bradley's prosecutorial misconduct claim is without merit. Even if it did have merit, however, and even assuming *arguendo* that his appellate counsel was deficient in not raising the federal constitutional claim on direct appeal, Bradley is unable to meet the second, "prejudice" part of the *Strickland* test: he cannot show a reasonable probability that, but for counsel's unprofessional errors, the result of the appeal would have been different.

## I.

Bradley raises as a separate claim that his trial attorney was constitutionally ineffective for failing to object to the alleged prosecutorial misconduct discussed immediately above in subsection h. of this opinion. Because the underlying claim of prosecutorial misconduct has no merit, however, Bradley's trial counsel cannot be ineffective in failing to object. Furthermore, at least with respect to the prosecutor's questioning Dixon regarding Bradley's employment, the defense counsel may well have had a strategy not to object, in that trial counsel also addressed the topic in an attempt to show that Bradley had financial resources and therefore did not need to rob a bank.

## J.

Bradley argues that the trial court erred when it failed to instruct the jury regarding Michigan instruction CJI2d 4.1, which discusses proper treatment of a defendant's out-of-court statements. Bradley raised the issue on direct appeal only as an alleged state-law violation. Here he frames the argument as a due process and Sixth Amendment claim, asserting, as with all of the procedurally defaulted claims, that ineffective assistance of appellate counsel excuses the procedural default.

The claim lacks merit. Bradley cannot demonstrate that the instruction was constitutionally required, especially in light of the fact that the trial judge gave an extensive instruction regarding accomplice testimony.

## K.

Bradley argues that even if each of the alleged errors does not independently justify grant of habeas relief, the cumulative weight of the errors mandates a grant of the writ. This court stated in 2002 that "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). In a recent unpublished opinion, this court cited *Lorraine* as authority for the emphatic statement that "[c]umulative error is not a basis for granting habeas relief in non-capital cases." *Eskridge v. Konteh*, 88 F. App'x 831, 836 (6th Cir. 2004).

Regardless of whether we may review Bradley's cumulative error claim, it has no merit; even where there may have been trial errors, they do not individually or cumulatively rise to the level of depriving Bradley of a fair trial.

## IV

Bradley argues that his convictions for conspiracy to commit bank robbery, breaking and entering the Urbany camp, and assault with intent to commit great bodily harm were not supported by sufficient evidence. The parties agree that Bradley's insufficiency-of-the evidence challenge is not procedurally defaulted. Bradley presented it on direct appeal to the Michigan Court of Appeals, which rejected it.

The case cited by the Michigan Court of Appeals, *People v. Terry*, 569 N.W.2d 641, 644 (Mich. Ct. App. 1997), for the appropriate test sets forth the same standard as that of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), viz., "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Michigan Court of Appeals having enunciated the proper constitutional law, the question then becomes, under AEDPA, whether that court's adjudication of the claims "resulted in a decision that . . . involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). *See Tinsley*, 399 F.3d at 815. Bradley acknowledges as much, but argues that the application of that law was unreasonable.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of petitioner's case." *Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The Michigan Court of Appeals reasonably applied the *Jackson* standard to the facts of this case in rejecting Bradley's insufficiency-of-the-evidence challenge with respect to the three counts. The district court laid out in careful detail the elements of the crimes and the evidence sufficient to support each of those elements. We agree with its analysis, and repeating its efforts here would be redundant.

V

For the foregoing reasons, we AFFIRM the district court's denial of Bradley's petition for a writ of habeas corpus.